LOUIS M. BUBALA III, ESQ.
Nevada Bar # 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: (775) 786-5000
Fax: 775-786-1177
Email: lbubala@jonesvargas.com

Attorneys for
KOHL'S DEPARTMENT STORES, INC.

*Electronically Filed on August 3, 2007*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>PTI HOLDING CORP., et al.,<br><br>Debtors. | Case Nos. 06-50140 through 06-50146<br><br>Administratively consolidated under:<br>Case No. BK-N-06-50140-GWZ<br>Chapter 11 |
| LONDON FOG GROUP, INC. and PACIFIC TRAIL, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>KOHL'S DEPARTMENT STORES, INC.,<br><br>Defendants. | Adversary No. BK-N-07-05066-GWZ<br><br>**SUPPLEMENT TO DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: None set by court<br>Hearing Time: |

Pursuant to the court's oral order on July 26, 2007, Defendant KOHL'S DEPARTMENT STORES, INC. ("Kohl's") files this supplement in support of its motion to dismiss (Ct. Dkt. #7). The court asked the parties to submit five pages of points and authorities concerning Plaintiffs' turnover claim. The matter arises because Plaintiffs allege Kohl's breached a contract and seeks to recover $270,000 in accounts receivable under the theories of breach of contract, unjust enrichment, and turnover. The specific question before the court is whether plaintiffs bring (1) a valid turnover claim, making this a core matter that abrogates the parties' contractual venue-

-1-

1  selection clause; or (2) only state-law claims, making this a non-core matter that requires transfer
2  of this matter to the Eastern District of Wisconsin pursuant to the venue clause.

### A.  The Definition of a Turnover Claim

Turnover requires "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt … except to the extent that such debt may be offset under section 553." 11 U.S.C. § 542(b). Although core proceedings including turnover, core proceedings are narrowly interpreted. 28 U.S.C. § 157(b)(2)(e); *Piombo Corp v. Castlerock Props.* (*In re Castlerock Props.*), 781 F.2d 159, 162 (9th Cir. 1986). As a result, a turnover claim must seek "undisputed" funds. *MCI Telecomm. Corp. v. Gurga* (*In re Gurga*), 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994); *Daewoo Motor Am., Inc. v. Gulf Ins. Co.* (*In re Daewoo Motor Am., Inc.*), 302 B.R. 308, 313 (C.D. Cal. 2003), *citing Gurga*.

### B.  Disputed Turnover Claims are Non-Core Proceedings

A disputed turnover is not a core proceeding, but a non-core, state-law claim. *Gurga*, 176 B.R. at 199. This distinction--which forces parties to litigate these disputed, non-core claims outside of bankruptcy court (unless the parties consent to entry of final judgment)--is consistent with Congressional intent after *Marathon*. *See Gurga*, 176 B.R at 200, *citing Hay & Co. v. Merrill Lynch*, 885 F.2d 1149, 1157 (3d Cir. 1989).

"Disputed" is viewed broadly. As the Ninth Circuit explained, an action pursuing "<u>property of</u> the debtor" is a core turnover action under bankruptcy law. *John Hancock Mutual Life Ins. Co. v. Watson* (*In re Kincaid*), 917 F.2d 1162, 1165 (1990) (emphasis in original), *reversing Watson v. Kincaid* (*In re Kincaid*), 96 B.R. 1014 (B.A.P. 9th Cir. 1989) (Jones, J.). But a claim for "<u>property owed to</u> the debtor, but belonging to a third party" is a non-core, state-law claim. *Id.* (emphasis in original). Other courts have elaborated on *Kincaid*, noting that "implicit in the concept of turnover is the idea that the property res itself being sought is clearly property of (or owned by) the debtor." *Borock v. Turner Constr. Co.* (*In re Sardo Corp.*), Case No. 95 A 01620, 1996 WL 362756, *14 (Bankr. N.D. Ill. June 11, 1996), *citing FLR Co. v. Brandt Constr. Co.* (*In re FLR Co.*), 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985).

### 1. Accounts receivable claims are non-core, state-law claims.

In this context, courts hold that actions to recover accounts receivable--that is, "property owed to the debtor"--often are not truly turnover actions. *See generally* James C. Matson, Comment, *Running Circles Around Marathon?*, 20 Emory Bankr. Dev. J. 451, 471-93 (2004) (concluding that the better view is that accounts receivable represent noncore matters).

*Commercial Heat Treating* offers an illustrative example. Judge Waldron confronted an adversary proceeding for turnover involving accounts receivable; the debtor alleged defendant breached their contract by refusing to pay for services. *Commercial Heat Treating of Dayton, Inc. v. Atlas Ind.* (*In re Commercial Heat Treating of Dayton, Inc.*), 80 B.R. 880, 883-84 (Bankr. S.D. Ohio 1987). The defendant agreed the parties had a contract, but denied the breach and moved to dismiss on the ground that the action presented non-code claims. *Id.* at 884. Judge Waldron began by analyzed *Marathon* to emphasize the Constitutional importance in deciding whether a matter is core or non-core. *Id.* at 881-83.

Judge Waldron then examined the plaintiff's claims and noted other courts held similar claims to be non-core. "The plaintiff's suit is not based on any right created by the federal bankruptcy law. … It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court." *Id.* at 889-90, *quoting In re Wood*, 825 F.2d 90, 96-97 (5th Cir. 1987). Judge Waldron also concluded the accounts receivable claim was non-core, despite the core allegation, because (1) the cause of action existed prior to bankruptcy; (2) the cause would continue to exist independent of the Bankruptcy Code; and (3) the filing of the bankruptcy case did not significantly affect the parties' rights and/or obligations. *Id.* at 890.

### 2. The claim is non-core if the obligation is disputed.

A number of courts have held that if the obligation to pay is disputed, the matter turns on state law and is non-core, even if the amount is undisputed. "It is settled law that the <u>debtor cannot use the turnover provisions to</u> liquidate contract disputes or otherwise <u>demand assets whose title is in dispute</u>." *Hirsch v. London Steamship Owners' Mutual Life Ins.* (*In re Seatrain Lines*), 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) (emphasis added), *quoting United States v. Inslaw,*

*Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991). *Hirsch* held that debtors could not characterize their claim as one for turnover since the "defendants vigorously dispute their obligation to pay" the proceeds. *Id.* Another court similarly held that the allegation that a party refused to pay the contract price was a non-core, state-law claim despite the turnover claim. *In re Craft Architectural Metals*, 115 B.R. 423, 427-29 (E.D.N.Y. 1989). The court pointed to an often-cited opinion on this question: "A turnover proceeding can only be considered a core proceeding under Section 542(b) when its purpose is the collection rather than the creation, recognition or liquidation of a matured date …. When a bonafide dispute exists as to liability involving state law, then the proceedings cannot be core." *Id.*, *quoting Acolyte Elec. v. City of N.Y.*, 69 B.R. 155, 1717-72 (Bankr. E.D.N.Y. 1986).

   **3.**   **Bankruptcy courts have long deferred decisions on disputed turnovers.**

  The requirement of an undisputed claim to assets that are clearly property of the estate dates back to the Bankruptcy Act. "If the one in possession could not substantially dispute that the property belonged to the bankruptcy estate, yet refused to turn the property over to trustee, the trustee could bring, in the bankruptcy court forum itself, an action for turnover." *Britton v. Fessler & Bowman, Inc.* (*In re Britton*), 66 B.R. 572, 574 (Bankr. E.D. Mich. 1986). "On the other hand, when the action was one in contract and there was a good-faith defense as to the estate's entitlement to the asset, the action was deemed 'plenary' and therefore had to be brought in some forum other than the bankruptcy court." *Id.* (citing cases under the Act).

  This distinction remains true. If a defendant disputes the contract breach, the action is not a core turnover proceeding because the outcome is determined by state law. *E.g.*, *Shuegue v. Blackwall Green Ltd.* (*In re Ionosphere Clubs, Inc.*), Case No. 93 CIV. 1260 (CSH), 1994 WL 132236, *3 (S.D.N.Y. April 14, 1994) (non-core matter because plaintiff's "state law claims … rely upon disputed matters of law and fact"); *Asousa P'ship v. Pinnacle Foods, Inc.* (*In re Asousa P'ship*), 264 B.R. 376, 385 (Bankr. E.D. Pa. 2001) (non-core because defendant disputed whether it breach lease, creating "legitimate contract dispute" subject to state-law determination); *R.I. Lithograph Corp. v. Aetna Cas. & Surety Co.* (*In re R.I. Lithograph Corp.*), 60 B.R. 199, 204

-4-

1  (Bankr. D.R.I. 1986) ("Precisely because Aetna disputes liability under the policy as to the amount
2  claimed, this is <u>not a turnover</u> proceeding …, but rather, a cause of action sounding in contract ….
3  The judicial liquidation of such an asset is not a core proceeding.") (emphasis in original).

### C. Plaintiffs Bring a Non-Core Breach of Contract Claim that Kohl's Disputes

Plaintiffs bring nothing more than an state-law, non-core action for breach of contract. This is undisputedly an action to collect accounts receivable. The Ninth Circuit held that such an action to collect "property owed to the debtor" is non-core. *Kincaid*, 917 F.2d at 1165. This is consistent with holdings from other circuits: "The plaintiff's suit is not based on any right created by the federal bankruptcy law. … It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court." *Wood*, 825 F.2d at 96-97.

Kohl's also disputes the allegation that it breached the contract or is liable. *See* 2d Decl. of L. Sledgister, filed concurrently. Plaintiffs repeatedly recognized their financial obligation to satisfy Kohl's profitability margins, providing more than $1.2 million in support due to the poor consumer demand for its goods. The Spring 2006 season was no different (when Plaintiffs filed for bankruptcy); Kohl's needed $270,000 in support. Kohl's immediately contacted Plaintiffs' representative (Mr. Hamilton), who confirmed Plaintiffs' knowledge of Kohl's profitability margin goal and Plaintiffs' account management to satisfy Kohl's goal. (Kohl's also disputes Plaintiffs' allegations that Mr. Hamilton was not their agent, presenting another state-law question that must be decided to resolve this matter.) Based the parties long-term relationship and Mr. Hamilton's representations, Kohl's was entitled to take the adjustment when it paid Plaintiffs' invoices.

Kohl's did not breach the contract. If Plaintiffs want to proceed with this action, they must prove their state-law claim for breach of contract. Despite the purported turnover claim, this is non-core matter must be transferred to Wisconsin pursuant to the parties' venue-selection clause.

This 3d day of August, 2007.

JONES VARGAS

By:     //s// Louis M. Bubala III
     LOUIS M. BUBALA III

Attorneys for
KOHL'S DEPARTMENT STORES, INC.

# CERTIFICATE OF SERVICE

1. On August 3, 2007, I served the following document(s):

**SUPPLEMENT TO DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MOTION TO DISMISS**

2. I served the above-named document(s) by the following means to the persons as listed below:

    x  a.  **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

Brian Jennings, Esq.
bjennings@perkinscoie.com

    ☐  b.  **United States mail, postage fully prepaid** (list persons and addresses):

    ☐  c.  **Personal Service** (list persons and addresses):

I personally delivered the document(s) to the persons at these addresses:

    ☐  For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

    ☐  For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

    x  d.  **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Alan D. Smith, Esq.
adsmith@perkinscoie.com

Steve Harris, Esq.
steve@renolaw.biz

    ☐  e.  **By fax transmission** (list persons and fax numbers):

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f.   **By messenger**:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed blow and providing them to a messenger for service. (A declaration by the messenger must be attached to this Certificate of Service).

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 3rd day of August, 2007.

| L. Bubala | //s// L. Bubala |
|---|---|
| Name | Signature |

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

-7-